**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL JONES** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 3:08-cv-1134** |
| **v.** | ) | |
| | ) | **Judge Nixon** |
| **CITY OF FRANKLIN,** | ) | **Magistrate Judge Knowles** |
| | ) | |
| **Defendant.** | ) | **JURY DEMAND** |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant City of Franklin's ("Defendant" or "the City")
Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 12), accompanied by a
Memorandum in Support (Doc. No. 13) and Statement of Undisputed, Material Facts (Doc. No.
14). Plaintiff Michael Jones ("Plaintiff" or "Jones") filed a Response to the Motion for Summary
Judgment (Doc. No. 22), a Response to Defendant's Statement of Facts (Doc. No. 23), and his
own Statement of Undisputed Facts (Doc. No. 24). Defendant subsequently filed a Reply to
Plaintiff's Response (Doc. No. 30). Also pending is Defendant's Motion to Strike portions of
Plaintiff's Response (Doc. No. 31). Plaintiff filed a Motion for Extension of Time to file a
response to Defendant's Motion to Strike (Doc. No. 33), and later filed a Response to
Defendant's Motion to Strike (Doc. No. 34). Finally, the Parties have also filed a Joint Motion
to Reschedule Trial Date (Doc. No. 42).

Plaintiff's Motion for Extension of Time (Doc. No. 33) is hereby **GRANTED**. For the
reasons discussed below, Defendant's Motion to Strike (Doc. No. 31) is **DENIED**, Defendant's

Case 3:08-cv-01134   Document 44   Filed 06/18/10   Page 1 of 22 PageID #: 581

Motion for Summary Judgment is **GRANTED**, and Parties' Joint Motion to Reschedule Trial Date is **DENIED as moot.**

## I.    BACKGROUND

Plaintiff Michael Jones is an African-American male firefighter for the Franklin Fire Department ("Fire Department"), an agency controlled by the City of Franklin.  (Doc. No. 9, at 1.)  Jones began working for the Fire Department in 1984 as a firefighter, was later promoted to engineer, and in 2002 was promoted to his current position as lieutenant.  (Doc. No. 13, at 1.)

On August 21, 2006, Plaintiff, along with six other firefighters, filed separate suits against the City of Franklin alleging disparate treatment and a hostile work environment in the Middle District of Tennessee.  *See Jones v. City of Franklin*, Case No. 3:06-cv-00808.  Plaintiff's lawsuit was consolidated with the lawsuits of three other plaintiffs, and was dismissed on a motion for summary judgment on January 23, 2008.  *Jones v. City of Franklin*, Case No. 3:06-cv-00807, slip op. at 3 (D. Tenn. filed Jan. 23, 2008) [hereinafter *Jones I*], *aff'd*, 309 F. App'x 938 (6th Cir. 2009).

On October 6, 2006, Jones injured his arm while reporting to a fire scene, and was ultimately diagnosed with a torn bicep.  (Doc. No. 22, at 1.)  Consequently, Jones was placed on light duty, where he performed job functions in the administrative office, transported equipment and supplies to different fire stations, visited elementary schools performing public education functions on behalf of the City, and performed fire inspections of buildings.  (*Id.*)

Sometime near November 20, 2006, Jones filed a formal complaint regarding his treatment by Assistant Chief Mike Culberson and Chief Garzarek after he had missed a day of

work due to his injury. (Depo. Jones p. 166-171.) City Administrator Jay Johnson later found that no harassment had taken place during the reported interaction. (*Id.* at 171.)

Jones underwent surgery for his work-related injury on December 5, 2006. (Doc. No. 13, at 6.) Due to the work restrictions placed upon Jones by his treating physician, Jones was again placed on light duty when he reported to work on January 19, 2007. (*Id.*) On July 25, 2007, Jones underwent a functional capacity exam, where his treating physician determined that Jones had permanent restrictions in his ability to perform certain types of physical labor. (*Id.* at 6-7.) Shortly thereafter, the City informed Jones that he could not work indefinitely in the Fire Department administrative offices, and was advised to seek other positions with the City for which he was qualified. (*Id.* at 7.) Jones later received a letter from City Administrator Jay Johnson informing him that his only alternative for future employment with the City of Franklin was to apply for other positions with the City. (Doc. No. 22, at 2.)

Jones then applied for two fire inspector positions, and two positions outside the Fire Department—one as a landscaper, and another as an equipment operator. (*Id.* at 2-3.) Jones wasn't selected for any of these positions. Several of the positions he applied for were filled by white men. (*Id.* at 2.)

When Jones indicated his interest in resuming his former position as lieutenant with the Fire Department, the Fire Department required him to take a second agility test. (*Id.* at 3.) Jones claims he was the first person injured on the job who was required to re-take the agility test in order to resume his former position. (*Id.*) Jones passed the agility test, and returned to his old position on September 19, 2007. (Jones Dep., Doc. No. 27, Att. 4, at 31.)

On January 23, 2008, *Jones I* was dismissed on a motion for summary judgment. (*Id.* at 2.)

On January 31, 2008, while Jones was attending one of the first classes of a departmental diversity training, he noticed "KKK" carved into the wall above the urinal in the restroom. ("the 'KKK' incident") (Doc. No. 13, at 3.) Several other members of the Fire Department were in the restroom at the time and also noticed the carvings. (*Id.*) Under the City's Human Resources Manual, supervisors are required to report a racially-offensive incident up the chain of command. (*Id.*) Two firefighters, Kirk White and Adam Vernon, reported the carving to their supervisor, Captain Clay Mackey. (*Id.*) Mackey failed to report the incident, despite the directive from the Human Resources Manual. (*Id.* at 4.) As lieutenant and supervisor, Jones was also required to report the incident up the chain of command. (*Id.* at 3.) Jones did not report the carving to the City, but did include the incident in his Equal Employment Opportunity Commission ("EEOC") claim. (*Id.*)

On February 25, 2008, Jones states he received an e-mail from supervisor Joe Polenzani containing racially derogatory references to African Americans. ("the Polenzani e-mail") (Jones Dep., at 182-84.)

Shortly before March 19, 2008, Jones filed his complaint with EEOC (Doc. No. 13, at 4), and began calling colleagues in search of supporting witnesses. (Jones Dep., at 135-36.) On March 19, Jones called White to ask if he had remembered the "KKK" incident. (*Id.*) This telephone call triggered Mackey's recollection of the incident, and Mackey subsequently e-mailed Shirley Harmon to report the event. (Doc. No. 13, at 4.) The carving's existence was then reported to Barry Baird, who had the carvings removed. (*Id.*) As a result of both Jones's and Mackey's failure to report the incident immediately, both individuals were suspended for one 24-hour shift and placed on probation for one year. (*Id.*) Jones appealed his discipline, and his appeal was evaluated and upheld in a hearing presided over by a neutral arbitrator brought in

-4-

by the City. (*Id.*) Jones asserts that subsequent to this, Chief Garzarek ordered Jones's supervisors to lower his performance evaluation. (Doc. No. 22, at 4.) Jones asserts that another similarly situated employee was treated more leniently—he cites an incident in late 2006, where Assistant Chief Gentry Fox failed to report firefighter Gairy Ferguson's complaints of race discrimination up his chain of command. (*Id.*) The only reprimand Fox received was a letter of counseling. (*Id.*)

On November 25, 2008, Jones filed the instant Complaint, claiming violations of 42 U.S.C. § 1981 (2008); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2008); and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (2008) (Doc. No. 1.) In particular, Jones alleges disparate treatment, retaliation and the existence of a racially hostile work environment. (Doc. No. 13, at 1.)

Sometime in 2009, Jones learned of leadership training that was being provided by the Fire Department to certain employees. (Doc. No. 22, at 3.) Jones was told he was not invited to attend the training because he had already attended a very similar training. (*Id.*) Jones asserts, however, that there were several white firefighters who attended the training who had also already received leadership training. (Doc. No. 13, at 1.)


## II.     DEFENDANT'S MOTION TO STRIKE

As a preliminary matter, Defendant filed a Motion to Strike (Doc. No. 31), seeking to strike the depositions of Chris Brown, Gentry Fox, David Doss, and David Paul Currie. Plaintiff filed a Motion for Extension of Time to file a response to Defendant's Motion to Strike (Doc. No. 33), and later filed a Response to Defendant's Motion to Strike (Doc. No. 34). Plaintiff's

Motion for Extension of Time (Doc. No. 33) is hereby GRANTED, and Defendant's Motion to Strike is DENIED.

**a.      Depositions of David Doss and David Paul Currie**

In regard to the depositions of David Doss and David Paul Currie, Defendant asserts that these depositions should be stricken under Federal Rule of Civil Procedure 37(b)(2)(A) because: (1) they were taken after the July 21, 2009 discovery deadline in violation of the Case Management Order; and (2) they were also taken after Defendant had filed its Motion for Summary Judgment.  (*Id.*)

Federal Rule of Civil Procedure 37(b)(2)(A) states: "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).

Plaintiff does not deny that he violated the discovery deadline in violation of the Case Management Order, but reasons that these depositions elicited previously unknown evidence that is relevant to Plaintiff's claims and captured contradictory statements made by Fire Chief Rocky Garzarek.  (Doc. No. 34, at 1.)  Furthermore, Plaintiff states that defense counsel was present at both of the depositions and cannot now claim any surprise or prejudice.  (*Id.*)  Defendant, Plaintiff asserts, had ample opportunity to cross-examine both witnesses.  (*Id.*)

In determining whether to impose sanctions for a party's failure to comply with a discovery order, the Sixth Circuit has weighed the following factors: (1) whether the failure to comply was a product of willfulness, bad faith, or fault; (2) whether the moving party was prejudiced by the noncompliance; (3) whether the party to be sanctioned was warned that the failure to comply could lead to sanctions; and (4) whether less drastic sanctions were imposed or considered.  *See Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).  While Plaintiff does

-6-

not deny that he violated the deadline in the Case Management Order, Defendant does not assert that Plaintiff did so in bad faith, nor does Defendant explain how it was prejudiced in the admission of the depositions.   Defendant's motion to strike the depositions of David Doss and David Paul Currie is therefore denied.

### b.        Depositions of Chris Brown and Gentry Fox

Regarding the depositions of Chris Brown and Gentry Fox, Defendant states that the depositions should be stricken because they were submitted in violation of Federal Rule of Civil Procedure 32(a)(1), as they were taken in a separate case, *Chris Brown v. City of Franklin*, Case No. 3:08-cv-00371.  (Doc. No. 31, at 2.)  In the instant case, while the defendants are the same party, they are represented by a different law firm.  (*Id.*)  Defendant argues that it received no notice of the depositions and was not given an opportunity to attend or cross-examine the witnesses regarding these issues.  (*Id.*)  Defendant also states that it was not provided a copy of these depositions and has only received the excerpts filed with Plaintiff's response.  (*Id.*)

Federal Rule of Civil Procedure 56 does not require anything more than affidavits in support of a motion for summary judgment.  *See Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-67 (9th Cir. 1981).  Thus, Rule 32 is inapposite.  The use of a deposition in summary judgment proceedings need only satisfy the admissibility requirements for affidavits, namely, that they are: (1) taken under oath; and (2) based on personal knowledge.  *See* 7 *Moore's Federal Practice – Civil* § 32.06 (2010).  To the extent that these depositions satisfy these requirements, and Defendant has not argued that they do not, the Brown and Fox depositions are admissible.

For the abovementioned reasons, Defendant's Motion to Strike (Doc. No. 31) is **DENIED** for the purposes of deciding the motion for summary judgment.

-7-

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### a. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

Mere allegations of a factual dispute between the parties are not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-moving party. *Id.* at 247-48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.* at 248.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, the non-movant may not rely solely on conclusory allegations, but rather must come forward with affirmative evidence which establishes its claims and raises an issue of genuine material fact. *Id.* at 324. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. 477 U.S. at 249-50 (citations

omitted).  It is true, however, that in ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure.  *Anderson*, 477 U.S. at 250.  The court must determine whether a reasonable jury would be able to return a verdict for the non-moving party and if so, the Court must deny summary judgment.  *Id.* at 249.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

### b.    Analysis

Plaintiff asserts the following claims under both Title VII and the THRA: (1) disparate treatment discrimination; (2) racially hostile work environment; and (3) retaliation.  Plaintiff also asserts a claim for violations of 42 U.S.C. § 1981.  Defendant asserts that all claims should be dismissed because Plaintiff fails to raise any genuine issue of material fact.  For the following reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

### i.    *Disparate Treatment*

As pieced together from Plaintiff's Complaint (Doc. No. 1) and the Statement of Facts in his Response (Doc. No. 22, at 1-7),  Jones's claim of disparate treatment, is based upon: (1) the City of Franklin's refusal to provide him with an administrative position after he sustained a

work-related injury that prevented him from performing his duties as a lieutenant with the Fire Department; (2) the City's refusal to hire Jones for other positions he applied to after learning he would not be offered a permanent administrative position with the Fire Department; and (3) the City's requirement that Jones re-take an agility exam in order to establish his ability to perform work as a fire lieutenant.

The City maintains that Jones's claims of disparate treatment should be dismissed because (1) his claims are barred by the doctrine of res judicata, as Jones could have amended his Complaint to include the additional claims of disparate treatment in the previous suit (Doc. No. 13, at 16); (2) his claims are barred under THRA by the one year statute of limitations (*Id.* at 17); and (3) Plaintiff fails to show another similarly-situated individual treated more favorably than himself (*Id.* at 17). The Court will address each of these arguments in turn.

### 1. Claim Preclusion

Defendant asserts that Jones is precluded from raising his claim of disparate treatment because he has or should have raised that claim in *Jones I* (Doc. No. 13, at 16) by amending his first complaint in Jones I to include this present claim of disparate treatment. (*Id.* at 17.) Defendant asserts that because Jones "sat on his rights," Jones is now precluded from asserting these claims in a second lawsuit. (*Id.*)

Under the doctrine of res judicata, also known as claim preclusion, a party can sue over a single cause of action only once. Specifically, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352-53 (1877)); *see also Rowe v. Register*, 2008 U.S. Dist. LEXIS 37925 (E.D. Tenn. 2008).

-10-

Claim preclusion has been enforced by the courts in order to prevent a multiplicity of suits, burdensome expenses, delays to plaintiffs and vexatious litigation against defendants.

Under the Sixth Circuit's articulation of claim preclusion, the moving party must show: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which was litigated in the prior action; and (4) an identity of the causes of action. *Holder v. City of Cleveland*, 287 F. App'x 468, 470 (6th Cir. 2008); *Trent v. Shelby County Gov't*, 2009 U.S. Dist. LEXIS 126664, 3-4 (W.D. Tenn. 2009) (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir. 1998); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

The Court finds that the first two requirements necessary for the application of claim preclusion are easily met. First, the Court finds a final decision on the merits by a court of competent jurisdiction. On January 23, 2008, Judge Echols granted the City of Franklin's motions for summary judgment in *Jones I*, dismissing with prejudice all of Jones's claims. *See* Case No. 3:06-cv-0807, slip op. Second, the Court finds this subsequent action to be one between the same parties or their privities. The present action is being brought by the same plaintiff as the one named in *Jones I* (Michael Jones) against the same defendants that he sued in *Jones I* (the City of Franklin on behalf of the Franklin Fire Department).

However, the Court does not find the third and fourth requirements for claim preclusion satisfied. "In order for the third and fourth elements to be satisfied, 'there must be an identity of the causes of action that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder*, 287 F. App'x. at 470-71. Put another way, identical causes of action are instances "[w]here two successive suits seek recovery for the same injury,"

or when "the first and second suits seek to remedy a single alleged wrong." *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978).

Jones's discrimination claim in this instant lawsuit is based on different set of facts than those pleaded in *Jones I*—to wit, Jones is presently alleging misconduct by the City that occurred after the complaint in *Jones I* was filed. While Defendants assert that matters that can be amended to the Complaint during the first proceeding are precluded from being asserted in a second lawsuit, claim preclusion has not been applied so broadly. Claim preclusion extends only to matters that can be claimed on the date the complaint is filed. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 400 F.3d 139, 141 (2d Cir. 2005); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). While Jones is advancing similar theories of discrimination in both *Jones I* and the instant suit, the events that gave rise to the lawsuits are separate, and Plaintiff is therefore not precluded from bringing this present claim.

### 2. Statute of Limitations

Defendant asserts that Jones's claims for disparate treatment are time-barred under the THRA. (Doc. No. 13, at 17.) Under the Tennessee Human Rights Act, complaints filed one year after the act of discrimination are time-barred. Tenn. Code Ann. § 4-21-311(d). This statute of limitations is not tolled while administrative charges are pending with the EEOC. *Pearison v. Pinkerton's, Inc.*, 2003 U.S. Dist. LEXIS 20176, *13 (E.D. Tenn. 2003).

The City informed Jones that they would not offer him a permanent administrative position with the Fire Department and advised him to seek other positions on July 25, 2007. (Doc. No. 13, at 7.) Jones applied and was not selected for at least three known positions. Around this time, the Fire Department required him to take a second agility test. (*Id.* at 3.) All of these events took place before September 19, 2007, when he returned to his former position of

lieutenant.  (Jones Dep., at 31.)  Jones filed this instant lawsuit on November 25, 2008, more than one year after the last alleged event.  Thus, the City is entitled to summary judgment on Jones's THRA claim for disparate treatment.

### 3.    *Plaintiff's Prima Facie Case*

Defendant states that Jones cannot prove a prima facie case, because he has failed to establish that a similarly-situated white firefighter was treated more favorably than him.  (Doc. No. 13, at 17.)

In order to establish his claim of race discrimination under Title VII, a plaintiff must either provide direct evidence of intentional discrimination by the defendant, or introduce circumstantial evidence that would support an inference of discrimination.  *Brennan v. Tractor Supply Co.*, 237 F. App'x. 9, 16 (6th Cir. 2007).  Direct evidence is evidence that if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal quotations omitted).  In the absence of direct evidence, as is the case here, Plaintiff must present circumstantial evidence through the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792 (1973); *see also Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 593 (6th Cir. 2007).

Under the burden-shifting analysis, Plaintiff bears the initial burden to establish a prima facie case.  To do so, Plaintiff must present evidence on all of the following elements: (1) he is a member of the protected class; (2) he was otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) he was otherwise treated less favorably than a similarly

situated employee outside of his protected class. *McDonald Douglas Corp.*, 411 U.S. at 802. By proving these elements, Plaintiff establishes "a rebuttable presumption of discrimination, and the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). If Defendant is successful in establishing a legitimate, nondiscriminatory reason for the adverse action, then the burden shifts back to Plaintiff to prove that the proffered reasons were actually a pretext to hide unlawful discrimination. *Id.*

The fourth prong of the prima facie case of discrimination requires Jones to establish that he was treated differently than similarly-situated white employees. *See Mitchell*, 964 F.2d at 582-83. Defendant asserts that Plaintiff was their first employee to receive permanent restrictions preventing him from doing his job. Therefore, Defendant states, Plaintiff is unable to satisfy this prong, as no similarly-situated white firefighters exist.

In his response, Plaintiff asserts that "[w]hite employees . . . were treated more favorably in light duty assignments, discipline, and performance evaluations." (Doc. No. 22, at 17.) In support of this allegation, Jones: (1) names Wayne Mobley, Jeff Willard and Wayne Morris as three individuals who were hired as fire inspectors, positions for which Jones applied but was not hired; (2) names Wayne Mobley and Hunter Kready as two firefighters who had positions created for them due to medical restrictions resulting from on-the-job injuries; and (3) states he is the first person injured on the job who was required to re-take the physical agility test. (*Id.* at 2-3.) While Plaintiff names other employees who are not members of the protected class, Plaintiff neglects to allege how these individuals were similarly situated. Plaintiff neglects to disclose, for example, whether they had similar job qualifications, whether they were injured under similar circumstances, or what administrative jobs were created for white firefighters placed on light

-14-

duty. Regarding the physical agility test, Plaintiff fails to name any individual who had received an on-the-job injury who was not required to re-take the physical agility test in order to resume his previous position. Because Plaintiff fails to do any of these things, his allegations do not satisfy the fourth requirement for a prima facie case for disparate treatment. As the Court finds no genuine issue of material fact as to whether Plaintiff was subjected to disparate treatment based on his race in Defendant's disciplinary actions against Plaintiff, summary judgment in favor of Defendant on these claims is hereby GRANTED.

### ii. *Hostile Work Environment*

As stated earlier, a party's claim is precluded if there exists: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which was litigated in the prior action; and (4) an identity of the causes of action." *Holder*, 287 F. App'x at 470.

In support of his claim for hostile work environment, Plaintiff repeats several allegations from the *Jones I* complaint. In particular, Jones states the following racially-derogatory remarks were made at work by white firefighters:

a.  African American employees are referred to as "niggers" and "boys";
b.  "Blacks" are lazy because they are always missing work on Monday;
c.  "Pimp days," when referring to a day an African American firefighter misses work;
d.  Klu Klux Klan membership cards; and
f. *[sic]* "That's what you get for marrying a nigger," when referring to the wife of a firefighter who was having marital problems.

(Doc. No. 1, ¶ 17.) Other than these statements, Jones also makes new allegations to support his hostile work environment claim. Jones cites: (1) the "KKK" incident (Doc. No. 13, at 3); (2) the Polenzani e-mail (Jones Dep. 182-84.); and (3) the events that gave rise to his disparate treatment and retaliation claims (the denial of job opportunities after his injury, the disciplinary action and

lower evaluation score resulting from his failure to report the "KKK" incident).  (Doc. No. 22, at

15.)  Defendant states that his claim is barred by res judicata, as the claim arises out of the same

ongoing pattern of conduct that served as the basis for his hostile work environment claim in

*Jones I.*  (Doc. No. 13, at 10.)

### 1.  *Previously Pled Racially-Derogatory Remarks*

The Court finds that all four required elements for claim preclusion are met for those

incidents that were previously alleged in *Jones I*.  The Court has already found that the first two

requirements necessary for the application of claim preclusion are met.  *Supra*, Part III.b.i.1.

Here, the third and fourth requirements for claim preclusion are also satisfied for the previously

claimed allegations, as there exists an identity of the facts creating the right of action and of the

evidence necessary to sustain each action.   As he does in *Jones I*, Jones alleges in the instant

case an ongoing hostile work environment, and he uses the same nucleus of operative facts to

prove this claim.  The Court therefore grants summary judgment in favor of Defendant for these

claims.

### 2.  *New Claims*

Defendant would also have the Court hold that Jones's new claims are barred by the

doctrine of claim preclusion.  However, as stated earlier, claim preclusion extends only to

matters that can be claimed on the date the complaint is filed.  *Legnani*, 400 F.3d at 141.  While

Jones is advancing similar theories of discrimination in both *Jones I* and the instant action, the

events that gave rise to the lawsuits are separate, and Plaintiff is therefore not precluded from

bringing this present claim.

Given that those claims previously pleaded are clearly barred by claim preclusion,

Jones's claim for racially hostile work environment must fail, as the remaining claims (the

-16-

"KKK" incident, Polenzani e-mail, and the City's failure to provide him additional job opportunities) are insufficient by themselves to satisfy a hostile work environment claim.

To successfully claim a hostile work environment, a plaintiff must prove the following elements: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based on his race; (3) such harassment had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of Plaintiff's employer. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). To evaluate the third prong—whether the harassment was sufficiently severe to create an intimidating, hostile, or offensive work environment—the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993). Courts must examine the totality of the circumstances. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Under this test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). The harassment against Plaintiff must be "so severe or pervasive as to alter the conditions of the victim's employment," and must be subjectively and objectively offensive. *Faragher*, 524 U.S. at 786-87. "Mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee," or "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient to constitute unlawful harassment. *Id.*

-17-

Plaintiff states that the events that gave rise to his disparate treatment and retaliation claims (the denial of job opportunities after his injury, the disciplinary action and lower evaluation score resulting from his failure to report the "KKK" incident) served to create a hostile work environment. (Doc. No. 22, at 15.) The Court finds that Plaintiff has failed to meet the second requirement of the prima facie case, since he has failed to show that any of these actions were motivated by racial animus, *see supra* Part III.b.i., *infra* Part III.b.iii.

The two remaining instances mentioned by Jones (the "KKK" incident and the Polenzani e-mail) are insufficient to meet the standard for hostile work environment on their own. The Court finds there exists no genuine issue of material fact as to whether Plaintiff was subject to unwelcome harassment based on his race, as he fails to establish an intimidating, hostile, and offensive work environment. Viewing Jones's allegations as a whole, the incidents were not so severe and pervasive that a reasonable person would find her work environment hostile and abusive. Moreover, Daniel has not presented evidence indicating that any of the alleged incidents of harassment interfered with his work performance.

For the abovementioned reasons, Defendant's motion for summary judgment on the issue of hostile work environment under Title VII is GRANTED.

### iii. Retaliation

Title VII prohibits an employer from retaliating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. §§ 2000e-3(a). Absent direct evidence of retaliation, as is the case here, retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework as discrimination claims. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563-64 (6th Cir. 2004). To establish a prima facie case of retaliation, Plaintiff must show: (1) he

engaged in activity protected by Title VII; (2) the City knew he engaged in this activity; (3) the

City subjected him to an adverse employment action; and (4) a causal connection exists between

the protected activity and the adverse employment action. *Id.* at 563. If Jones establishes a

prima facie case of retaliation, the burden shifts to the City of Franklin to articulate a legitimate

reason for its employment action; if the City meets that burden, Jones can prevail only by

showing that the articulated reason is false or pretextual. *Halfacre v. Home Depot, U.S.A., Inc.*,

221 F. App'x. 424, 431 (6th Cir. Tenn. 2007) (citing *Wrenn v. Gould*, 808 F.2d 493, 500-01 (6th

Cir. 1987)).

     Jones's retaliation claim is based on the theory that the City retaliated against him for

bringing charges of discrimination against the City in *Jones I*. Jones cites as instances of

retaliation: (1) the City's failure to place him in a permanent light duty position after his injury

(Doc. No. 1, at 3); (2) the City's refusal to offer Jones leadership training (Doc. No. 22, at 3);

and (3) the discipline he suffered after reporting the "KKK" incident to the EEOC (*Id.* at 3-4).

     Defendant states Plaintiff's retaliation claim should be dismissed because Plaintiff is

unable to prove a causal connection between Jones's protected activity and the City's alleged

retaliatory actions. According to Defendant, the temporal proximity between the protected

action and the alleged retaliatory conduct is not sufficient by itself to prove retaliation. (Doc.

No. 13, at 16.) Defendant states that such temporal proximity must be coupled with retaliatory

conduct or more favorable treatment of another employee. (*Id.*) However, Defendant states,

Plaintiff fails to plead any facts in addition to temporal proximity. (*Id.*)

     In order to satisfy the causation prong of the retaliation claim, temporal proximity is not

enough to survive the summary judgment stage of litigation. *Cooper v. City of North Olmsted*,

795 F.2d 1265 (6th Cir. 1986). A plaintiff must point to additional evidence to support a finding

that the protected activity and the adverse action were connected. *Id.* "[A] plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." 10 *Tenn. Juris. Employer and Employee* § 63 (2010) (citing *Hudson v. M.S. Carriers, Inc.*, 335 F. Supp. 2d 853 (W.D. Tenn. 2003)). Jones must "show a significant change in [his] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a significant change in benefits, or other factors unique to [his] particular situation." *Hudson*, 335 F. Supp. 2d at 863 (quoting *Akers v. Alvery*, 338 F.3d 491, 497-98 (6th Cir. 2003)).

In addition to temporal proximity, Jones only points to one additional instance that could demonstrate a causal link. Regarding the discipline Jones received for not reporting the "KKK" incident up the chain of command, Jones points to the letter of counseling issued to Assistant Chief Gentry Fox, an employee of the City who failed to report a firefighter's complaints of race discrimination versus the 24-hour suspension and one-year probation received by Plaintiff for a similar infraction. (Doc. No. 22, at 4.) Jones does not disclose the details of the discrimination that prompted the Fox reprimand, nor does he assert enough facts surrounding the event to prove that Fox was similarly situated. However, this Court finds Captain Clay Mackey, who failed to report the same incident as the one witnessed and not reported by Jones, is a more similarly situated individual. Mackey, like Jones, was suspended for twenty-four hours and given one year probation. Thus, Jones fails to furnish any evidence aside from temporal proximity to show a causal link between the protected activity and any adverse employment actions. For this reason, Defendant's motion for summary judgment on the issue of retaliation under Title VII is GRANTED.

-20-

#### iv.  42 U.S.C. § 1981

Jones also alleges violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981, by the

City of Franklin.  Defendant states that Plaintiff's action under § 1981 should be dismissed for

failure to state a claim.  (Doc. No. 13, at 18.)  In particular, the City states that the exclusive

remedy for a violation of rights by a municipality under 42 U.S.C. § 1981 is a suit brought

pursuant to 42 U.S.C. § 1983.  (*Id.*)  Because the City of Franklin is a municipality, Defendant

states, Plaintiff's claim must be brought under 42 U.S.C. § 1983.  (*Id.*)  This same question of

law was addressed in *Jones I* by Judge Echols, who wrote:

> Although § 1981 confers certain rights, the statute itself does not provide a
> cause of action for race discrimination. In *Jett v. Dallas Independent School Dist.*,
> 591 U.S. 701, 733 (1989), the Supreme Court held that 42 U.S.C. § 1983 provides
> the exclusive remedy for §1981 claims brought against a municipality. In 1991,
> Congress amended § 1981 to add subsection (c) which states: "The rights
> protected by this section are protected against impairment by nongovernmental
> discrimination and impairment under color of State law."
>
> Subsequently, the question arose in the federal courts whether this
> statutory amendment abrogated *Jett* and created an implied cause of action for §
> 1981 claims for race discrimination against municipalities. *See Arendale v. City of
> Memphis*, 2006 WL 3053402 at * 4-6 (W.D. Tenn. 2006); *Powell v. City of
> Pittsfield*, 143 F. Supp. 2d 94, 111 (D.Mass. 2001). In the Sixth Circuit this
> question has not been resolved by the court of appeals, but district courts continue
> to follow *Jett*.  *See e.g. Arendale*, 2006 WL 3053402 at *5; *Baker v. Shelby
> County Gov't*, 2006 WL 2927687 at *2 (W.D. Tenn. 2006); *Hayes v. City of
> Memphis Police Dept.*, 2006 WL 2882682 at *4 (W.D. Tenn. 2006); *Lowery v.
> City of Cleveland*, 2006 WL 2010837 at **3-4 (N.D. Ohio 2006); *Johnson v. City
> of Franklin*, 2005 WL 1661975 at *5 (W.D. Ky. 2005).

Case No. 3:06-cv-00807, slip op. at 3.  The court in *Jones I* subsequently dismissed Jones's §

1981 claim.  Since the Court's decision in *Jones I*, the Sixth Circuit has held that § 1981's

implicit cause of action does not extend to suits brought against state actors, and that the 1991

amendment to § 1981 did not overrule *Jett*.  *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th

Cir. 2008).  Indeed, this Court also finds that Plaintiff fails to state a claim for municipal liability

under § 1981, and Defendant is entitled to summary judgment on Plaintiff's § 1981 claims.

-21-

## IV. CONCLUSION

Plaintiff has not demonstrated that a genuine issue of material fact exists regarding any of his claims in the instant matter. For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 12) and **DISMISSES** Plaintiff's claims of racial discrimination, harassment, retaliation, and constructive discharge under Title VII, THRA, and 42 U.S.C. § 1981 in their entirety. Additionally, Plaintiff's Motion for Extension of Time (Doc. No. 33) is hereby **GRANTED**, Defendant's Motion to Strike (Doc. No. 31) is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Parties' Joint Motion to Reschedule Trial Date is **DENIED as moot.**

It is so ORDERED.

Entered this the ___18th____ day of June, 2010.


JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT